UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

BUNNY BOGERY,

           Plaintiff,

-against-

THE UNITED STATES OF AMERICA,

           Defendants.

---------------------------------------------------------------x

PLAINTIFF'S COUNTER STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

17-CV-6996 (VEC)

   Pursuant to Local Civil Rule 56.1 of the Rules of this Court, Plaintiff, Bunny Bogery submits the following counter statement pursuant to Local Civil Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern District of New York, that there are genuine issues to be tried with respect to the following material facts:

   1.  During the year 2014, the United States Postal Service ("USPS") operated the Soundview Station Post Office (the "Soundview Station"), located at 1687 Gleason Avenue in the Bronx, New York. Exhibit A to the Declaration of Charles S. Jacob ("Jacob Decl."), Soundview Realty Associates, Inc.—United States Postal Service Lease Agreement (July 28, 2005)

   **Response:**  Undisputed

   2.  It did not snow in the Bronx, New York, on December 23, 2014. Bogery Tr. 41:22-23; Ex. B to Jacob Decl., Local Climatological Data-LaGuardia Airport, December 23, 2014, National Oceanic & Atmospheric Administration (generated on June 25, 2018) (the "Climatological Report"); Ex. F to Jacob Decl., Local Climatological Data-Central Park, December 23, 2014, National Oceanic & Atmospheric Administration (generated on June 28, 2018) (the "Climatological Report").

**Response:** Undisputed

3. There were no puddles outside the Soundview Station on December 23, 2014, at approximately 4:15 PM. Bogery Tr. 117:6-9.

**Response:** Undisputed

4. It was not raining in the area of Soundview Station on December 23, 2014, at approximately 4:15 PM. Bogery Tr. 38:22-24; 41:16.

**Response:** Undisputed

5. There is an area inside the Soundview Station cabined on one side by the door that opens onto Gleason Avenue, and on the other by three interior doors that open to the post office's lobby (the "Entrance Area"). Bogery Tr. 43:15-23.

**Response:** Undisputed

6. Plaintiff did not tell anyone at the Soundview Station that she purportedly fell on December 23, 2014. Bogery Tr. 52:10-12.

**Response:** Undisputed

7. Plaintiff did not report to anyone at Soundview Station the existence of a puddle or a hazardous condition on December 23, 2014. Bogery Tr. 50: 13-15; 52:10-21.

**Response:** Undisputed

8. Aly Basheradan is a United States government employee that has worked as a custodian at the Soundview Station since approximately 2012. Basheardan Tr. 5:11-19.

**Response:** Undisputed

9. On rainy days, water may be tracked into the Entrance Area because of customers tracking in water on their coats, shoes, or umbrellas, or because rain may blow into the building as a result of wind. Basheradan Tr. 43:7-20.

**Response:** Undisputed

In December 2014, Mr. Basheradan's duties included cleaning and maintaining the Soundview Station, and his hours were from 8:30 AM to 5:30 PM. Basheradan Tr. 8:9-17.

Case 1:17-cv-06996-VEC Document 31 Filed 06/29/18 Page 3 of 4.

**Response:** Undisputed

10. USPS custodial employees at the Soundview Station implement a standard operating procedure on all rainy days. Basheradan Tr. 26:23-27:4.

**Response:** Undisputed

11. Under that procedure, USPS custodial employees put out wet floor signs in the Entrance Area on rainy days. Basheradan Tr. 27:5-12.

**Response:** Undisputed

12. Under that procedure, USPS custodian employees mop the floor in the entrance area with a dry mop. Basheradan Tr. 29: 12-23.

**Response:** Undisputed

13. Under that procedure, on days where the rain is heavy, Basheradan will station himself in the Entrance Area, and dry mop again when necessary. Basheradan Tr. 30:2-20; 32:4-14; 50:4-1 8.

**Response:** Undisputed

14. Under that procedure, on days where it is only drizzling, a member of the custodial staff will check the Entrance Area every approximately ten minutes and dry mop the area. Basheradan Tr. 31:6-24.

**Response:** Undisputed

15. Under that procedure, if it stops raining outside, Basheradan will check the floor, mop if needed, and not check again unless it starts raining again. Basheradan Tr. 33: 16-34-8.

**Response:** Undisputed, however, he later testified on Page 41 that even when it is drizzling, he would be stationed there the entire time.

16. On days with heavy rain, the floor in the entrance area of the Soundview Station may be a little damp, but there would be no puddles. Basheradan Tr. 44:6-25.

**Response:** Undisputed

17. On days with heavy rain, Mr. Basheradan would monitor the floor in the Entrance Area constantly. Basheradan Tr. 50:16-18.

**Response:** Undisputed

18. Mr. Basheradan is unaware of anyone slipping and falling on a wet floor at the Soundview Station prior to December 23, 2014. Basheradan Tr. 37: 17-21.

**Response:** Undisputed

19. Mr. Basheradan is unaware of any claims or lawsuits filed against the U.S. government for a slip-and-fall at the Soundview Station. Basheradan Tr. 39: 15-18.

**Response:** Undisputed

20. No one has ever told Mr. Basheradan that the floor was wet in the Soundview Station because it was raining outside. Basheradan Tr. 48:20-23.

**Response:** Undisputed

### Local Rule 56.1 (b) Statement of Additional Facts

Plaintiff hereby asserts the following additional facts, undisputed material facts that require the denial of defendant's Motion for Summary judgment:

21. Ms. Bogery testified that the accident that is the subject of this lawsuit occurred on December 23, 2014. Bogery Tr. Page 32.

22. The accident occurred when she arrived at the Soundview Post Office at around 4:15 p.m. Bogery Tr. Page 36.

23. Ms. Bogery testified that it had rained most of the afternoon and had rained "really hard" before it stopped raining 30 minutes to an hour before she arrived at the post office. Bogery Tr. Pages 38-39.

24. After parking her car, she walked toward the post office, pulled the door open, took one or two steps and slipped and fell. Bogery Tr. Page 42.

25. When she walked in, she pulled the door open and stepped in toward the right side of the vestibule. Bogery Tr. Page 43.

26. She slipped due to a puddle of water by the entrance. Bogery Tr. Pages 43-44.

27. She did not see the puddle until after she slipped in it. Bogery Tr. Page 44.

28. The puddle was two and half to three feet wide and one and a half to two inches deep. Bogery Tr. Pages 45-46.

29. There was a caution sign one foot to the left of the puddle, but she did not see it until after she slipped. Bogery Tr. Page 51.

30. After her accident, she went inside to pick up her package and left 7-8 minutes later, at which time the puddle was still not cleaned up. Bogery Tr. Pages 53-54.

31. Mr. Basheradan testified that he has no independent recollection of the subject accident, the weather at the time or anything else that transpired on that day. Basheradan Tr. Page 10.

32. He never placed any rugs or mats on the tile floor near the entrance. Basheradan Tr. Page 21.

33. He and the other custodian would not mop or sweep while customers were present. Basheradan Tr. Page 23.

34. If there was a spill or other hazard, they would put a wet floor sign down and mop it up. Basheradan Tr. Pages 23-34.

35. The wet floor sign was about knee high. Basheradan Tr. Page 25.

36. On days that it rained, he would simply put a wet floor sign in front of the blue door as depicted in plaintiff's Exhibit 3. Basheradan Tr. Page 27.

37. When it rained "profusely," he or the other custodian would mop the entrance area every 5-10 minutes. Basheradan Tr. Page 30.

38. Even when it just drizzled, they would still mop the entrance area every 10 minutes, which would take 10-15 minutes to mop depending on how much water accumulated on the floor. Basheradan Tr. Page 31.

39. When it is "raining really heavy," they would "stay there to make sure that it doesn't build up again." Basheradan Tr. Page 32.

40. Mr. Bashseradan testified later that even when it drizzled, someone would stand there the entire time. Basheradan Tr. Page 41.

41. Mr. Basheradan testified that in general, "customers do walk in and out. They have no regard for wet floor signs or anything else. They want to get in and take care of their mail issues." Basheradan Tr. Page 32.

42. With regard to the caution signs, he testified that they were never placed by the door itself. Basheradan Tr. Page 34

43. Mr. Basheradan never verbally warned customers about the wet floor when it rained. Basheradan Tr. Page 33.

44. Once it stops raining, they immediately stop checking the floor since "there is no reason to check it again." Basheradan Tr. Page 34.

45. With regard to whether they place any mats on the floor by the entrance in front of the door when it rains, Mr. Basheradan stated "I don't know about then, but they put mats in now." Basheradan Tr. Page 34.

46. Mr. Basheradan admitted that the floor is slippery when wet and the reason he mops it is "to prevent accidents." Basheradan Tr. Page 36.

47. Back in 2014, the Post Office had garbage cans for people to put their umbrellas in which were located just past the entrance area. Basheradan Tr. Page 37.

48. The reason they would have to mop every ten minutes when it rained was because "when they open the door they bring in the water off their clothes, off their boots. They get inside with their umbrellas and they shake their umbrellas and or they shake their rain coat." Basheradan Tr. Page 43.

49. He further testified that any water that was on the floor of the subject entrance would have come from the rain as just described or just from when they "open the door the rain runs into the building." Basheradan Tr. Page 43.

50. There was no awning above the outside of the entrance door, so when it rained, one standing right outside the door would be standing in the rain. Basheradan Tr. Pages 50-51.

51. Back in 2014, the only time he would clean the entrance area is when he, himself, was aware that it was raining and it was wet. Basheradan Tr. Page 49.

52. No one else would tell him that it was raining. Basheradan Tr. Pages 49-50.

Dated: Rockville Centre, New York
      July 26, 2018

                                           ISAACSON, SCHIOWITZ & KORSON, LLP
                                           *Attorney for Plaintiff*
                                           371 Merrick Road
                                           Rockville Centre, NY 11570
                                           (5160 800-9000

                           By:     _____
                                           Jeremy Schiowitz

To:

**UNITED STATES ATTORNEY'S OFFICE**
86 Chambers Street
New York, New York 10007
Charles Jacob, Assistant US Attorney