USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/6/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BUNNY BOGERY,

                       Plaintiff,

           -against-

THE UNITED STATES OF AMERICA,

                       Defendant.
------------------------------------------------------------- X

17-CV-6996 (VEC)

ORDER AND OPINION

VALERIE CAPRONI, United States District Judge:

      Plaintiff Bunny Bogery ("Plaintiff" or "Bogery") brings this action against Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA") to recover for injuries she allegedly sustained in a U.S. Post Office. *See* Amended Complaint ("Am. Compl.") [Dkt. 22]. Plaintiff alleges that, as a result of Defendant's negligence, she slipped and fell in a large puddle of water as she was entering a Post Office in the Bronx. *See id*. ¶¶ 10, 15. Defendant moved for summary judgment. *See* Notice of Motion ("Notice of Mot.") [Dkt. 28]. Because Plaintiff's theories of liability are awash with legal holes and evidentiary chasms, her claim against Defendant falls short. For the following reasons, Defendant's motion is GRANTED.

I.    **BACKGROUND**[1]

      At all relevant times, the United States Postal Service ("USPS") operated the Soundview

---

[1] All facts stated herein that are drawn from the parties' Local Civil Rule 56.1 Statements are undisputed unless otherwise noted. Facts in this section are also drawn from deposition testimony and exhibits directly, particularly those in dispute, and cited as such where appropriate. The Court refers to the parties' filings with the following abbreviations: Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Mem.") [Dkt. 29]; Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts ("D.S.") [Dkt. 31]; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp.") [Dkt. 32]; Plaintiff's Local Civil Rule 56.1 Counter Statement of Undisputed Material Facts ("P.S.") [Dkt. 34]; Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("Reply") [Dkt. 35]; Defendant's Response to Plaintiff's Local Civil Rule 56.1 Counter Statement of Undisputed Facts ("D.R.S.") [Dkt. 36].

Station Post Office ("Post Office") pursuant to a lease of the premises at 1687 Gleason Avenue in the Bronx, New York. P.S. ¶ 1; Lease Agreement (the "Lease") [Dkt. 30-1]. One entrance to the Post Office features an outer door on Gleason Avenue, which leads to a vestibule (the "Entrance Area") with three interior doors that lead to the Post Office's lobby. P.S. ¶ 5.

According to Plaintiff, her accident occurred on December 23, 2014. D.R.S. ¶ 21. She allegedly went to the Post Office around 4:15 P.M. to retrieve a package. Transcript of Deposition of Bunny Bogery, May 9, 2018 ("Bogery Tr.") [Dkt. 33 at 3–126] at 35:6–36:4.[2] Bogery believes that it rained most of that day and rained "really hard" prior to her departure for the Post Office. *Id*. at 38:13–21. It was not raining, however, as she drove to the Post Office, and it had not rained for the half-hour to an hour before she arrived there. *Id*. at 38:22–39:7. Bogery used the Gleason Avenue entrance and took one or two steps inside the Entrance Area before slipping and falling. *Id*. at 40:17–43:23. According to Bogery, she slipped because she stepped in a large puddle of water—about two feet wide, two and a half to three feet long, and an inch and a half to two inches deep—which she did not see before she slipped. *Id*. at 43:24–46:3. When Bogery fell, she lost her balance, twisted, landed on her right knee, and then caught herself with her hands. *Id*. at 46:4–49:19. She took about a minute to get up and, as far as she knew, no one saw her fall. *Id*. at 50:6–18. There was a sign in the Entrance Area about a foot from where Plaintiff fell that warned customers about wet floors; Plaintiff did not see the sign before she fell, but the sign was visible to and in the line of sight for someone who entered through the door Plaintiff used. *Id*. at 50:25–52:7. After she got up, Plaintiff retrieved her package and left through the same door she had entered. *Id*. at 52:8–53:14. She was in the Post Office

---

[2] Because Plaintiff did not file the deposition transcript as an attachment, it falls within a larger 183-page file at Docket Entry 33. When citing a page of this transcript, the Court refers to the internal pagination of the transcript rather than the docket file's page numbers.

approximately seven or eight minutes. *Id*. at 54:8–11. When she left, the puddle was still there, but she did not slip on her way out. *Id*. at 53:7–14. It is undisputed that Plaintiff did not tell anyone at the Post Office that she fell or that there was a puddle in the Entrance Area. P.S. ¶¶ 6–7.

It is undisputed that at 4:15 P.M. on December 23, 2014, the time of the alleged accident, it was not raining, there were no puddles outside the Post Office, and no snow had fallen that day. P.S. ¶¶ 2–4. It is also not disputed that on rainy days, customers track water into the Entrance Area on their coats, shoes, and umbrellas, and, if it is raining particularly heavily, sometimes rain runs into the Entrance Area through the exterior door. *Id*. ¶ 9; D.R.S. 48–49.[3] The Post Office's custodians, one of whom is Aly Basherdan, have a standard operating procedure for rainy days. P.S. ¶¶ 8, 10. According to that procedure, custodial employees put a knee-high wet floor sign in the Entrance Area and mop that area with a dry mop. *Id*. ¶¶ 11–12; D.R.S ¶¶ 35–36. When the rain is heavy, a custodian is stationed in the Entrance Area and dry mops when necessary; if it is only drizzling, a custodian checks the Entrance Area approximately every ten minutes and dry mops as necessary. P.S. ¶¶ 13–14; D.R.S. ¶¶ 37–40. On days with

---

[3] Defendant challenges Plaintiff's inclusion of additional facts in her Counter Statement beyond the 20 paragraphs in its Statement, asserting that a party opposing a motion for summary judgment can only add facts to its Rule 56.1 response if the opposing party is filing its own cross-motion for summary judgment. *See* D.R.S. at 1–2. This is plainly incorrect. There is no such provision in the text of Local Civil Rule 56.1(b), and other courts have rejected this very argument. *See, e.g.*, *Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 637 (S.D.N.Y. 2005) ("The Defendant errs, however, when it contests that Plaintiffs 'impermissibly' added facts to their opposition statement. 'Rule 56.1(b) allows the opposing party to "include . . . additional paragraphs containing a separate short and concise statement of additional material facts as to which it is contended that there exists a genuine fact to be tried."'" *Wojcik v. 42nd Street Dev. Project, Inc.*, 386 F. Supp. 2d 442, 448 (S.D.N.Y. 2005) (citing Local Civil Rule 56.1(b)). In *Wojcik*, this Court held that as long as the plaintiff's allegations were properly supported by citations to the record, the Court would consider the statement as 'proffering additional material facts as to which plaintiff contend[ed] that there exist[ ][ed] a genuine fact to be tried.' *Id*."). The case on which Defendant relies for its position, *Trezza v. United Workers of America*, is inapt because, in that case, it appears the plaintiff submitted a 56.1 Counter Statement that only set forth its own facts without responding to the defendant's 56.1 Statement, and the plaintiff did not state whether defendant's facts were or were not in dispute. *See* No. 08 Civ. 9801 (PKC), 2010 WL 1253533, at *1–2 (S.D.N.Y. Mar. 18, 2010); D.R.S. at 2. Here, however, Plaintiff complied with the Local Rule and explicitly acknowledged Defendant's facts as "undisputed" before setting forth her own facts. *See* P.S. Accordingly, the Court will consider the additional facts set forth by Plaintiff in her Rule 56.1 Counter Statement.

heavy rain, a custodian monitors the floor in the Entrance Area constantly. P.S. ¶ 17. The floor in the Entrance Area becomes damp at times, but there has been no experience with puddles forming. *Id.* ¶ 16. In accordance with the Post Office's procedure, when it stops raining, a custodian checks the Entrance Area, mops if needed, and does not check again unless the rain resumes. *Id.* ¶ 15.

Basherdan does not have any specific memory of the date in question, including the weather that day. D.R.S. ¶ 31. Basherdan is unaware of anyone slipping and falling on a wet floor prior to the date of the alleged accident. P.S. ¶ 18.

## II. DISCUSSION

### A. Standard of Review and Legal Background

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation marks omitted). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citation and internal quotation marks omitted). Courts "construe the facts in the light most favorable to the nonmoving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)) (internal quotation marks omitted).

"In a case brought pursuant to the FTCA, substantive liability is determined by reference to 'the law of the place where the act or omission occurred.'" *Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (quoting 28 U.S.C. § 1346(b)). The procedural aspects of an FTCA action are governed by federal law. *Id*. (citations omitted). Accordingly, because the allegedly negligent act occurred in New York, New York law governs the substantive slip and fall claim, while the moving party's burden is procedural and governed by federal law. *See id.*; *Decker v. Middletown Walmart Supercenter Store*, No. 15 CIV. 2886 (JCM), 2017 WL 568761, at *3 (S.D.N.Y. Feb. 10, 2017) (citations omitted).

"Under New York law, a plaintiff asserting a negligence claim must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Rodriguez v. Wal-Mart Stores E., LP*, No. 16-CV-2603 (CS), 2017 WL 4045745, at *3 (S.D.N.Y. Sept. 11, 2017) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)) (internal quotation marks omitted). For a slip-and-fall premises liability case, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition." *Id*. (quoting *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (internal quotation marks omitted). In contrast to New York law for slip-and-fall cases, "under federal law, the moving party need not make any affirmative *prima facie* showing on a motion for summary judgment, and may discharge its burden of proof merely by pointing to an absence of evidence to support an essential element of Plaintiff's claim." *Decker*, 2017 WL 568761, at *4 (quoting *Vasquez*, 2016 WL 315879, at *5) (internal quotation marks and alterations omitted).

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant." *Vasquez*, 2016 WL 315879, at *7

(citing *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014); *Gonzalez*, 299 F. Supp. 2d at 192). "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that [the defendant] created the condition through affirmative acts, a plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker*, 2017 WL 568761, at *5 (quoting *Vasquez*, 2016 WL 315879, at *7) (internal quotation marks and alterations omitted).

With regard to notice, "[a] defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Decker*, 2017 WL 568761, at *6 (quoting *Cousin v. White Castle Sys., Inc.*, No. 06-CV-6335 JMA, 2009 WL 1955555, at *7 (E.D.N.Y. July 6, 2009)) (internal quotation marks omitted). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Rodriguez*, 2017 WL 4045745, at *4 (quoting *Gordon v. Am. Museum of Nat. History*, 492 N.E.2d 774, 775 (N.Y. 1986)) (internal quotation marks omitted). "In cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." *Id*. (quoting *Stephanides v. BJ's Wholesale Club, Inc.*, No. 12-CV-83, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013)) (internal quotation marks and alteration omitted). "Alternatively, a plaintiff can establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." *Watts v. Wal-Mart Stores E., LP*, No. 16-CV-4411 (KMK), 2018 WL 1626169, at *5 n.7 (S.D.N.Y. Mar. 29, 2018) (quoting *Mazerbo v. Murphy*, 860 N.Y.S.2d 289, 291 (3d Dep't 2008)) (internal quotation marks

and alteration omitted).[4] The New York Court of Appeals has made clear, however, "that a defendant's 'general awareness' of a dangerous condition on the premises is not legally sufficient to charge a defendant with constructive notice of the particular condition that caused the plaintiff's injury." *Gonzalez*, 299 F. Supp. 2d at 193 (citing *Gordon*, 492 N.E.2d at 775).

### B. There is No Evidence that Defendant Created the Alleged Puddle

Defendant first contends that there is no evidence in the record that any Post Office employee was responsible for creating the alleged puddle and that any allegation that Defendant bore responsibility for creating the puddle would be impermissibly speculative. Mem. at 7–8. Plaintiff does not contest this point in her Opposition, instead addressing only notice and inspection theories of liability. *See* Opp. at 8–12. Nor has the Court been able to identify any evidence in the record from which Plaintiff might argue that Defendant is responsible for the creation of the alleged puddle. Accordingly, there is no evidence from which Plaintiff could argue that Defendant created the puddle, precluding liability on this theory.

### C. There is No Evidence that Defendant Had Actual Notice of the Alleged Puddle

Plaintiff argues that Defendant had actual knowledge of the dangerous condition because "[D]efendant [had] placed a wet floor caution sign next to the puddle." Opp. at 8. Defendant argues that there is no evidence that any Post Office employee was aware of the alleged condition, relying on Basherdan's testimony that he had no specific memory of the date in question and was unaware of anyone ever slipping and falling at the Post Office prior to Bogery's accident. Mem. at 8–9. Defendant points out that, although Plaintiff testified that the

---

[4] Courts also use the phrase "routinely" when describing this element. *See, e.g.*, *Gonzalez*, 229 F. Supp. 2d at 193 ("[T]he plaintiff may also establish constructive notice by submitting evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord.") (quoting *O'Connor–Miele v. Barhite & Holzinger*, 650 N.Y.S.2d 717, 719 (1st Dep't 1996)) (internal quotation marks omitted).

7

sign was near the puddle, there is no evidence that the sign was posted when the puddle was present, nor is there any evidence that any employee received a complaint or was otherwise alerted to the existence of the puddle in question. Reply at 2–3.

The Court agrees with Defendant—there is no evidence in the record that Defendant actually knew about the alleged puddle by virtue of creating it, receiving complaints about it, or seeing it. "Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (citation omitted). "[C]ourts applying New York law have rejected allegations of actual notice where [a] defendant has presented evidence that, before the accident, [its] employees who were responsible for the area were unaware of the alleged condition and had not received complaints about the area." *Rivera v. Target Dep't Store, Inc.*, No. 15 CIV. 7846 (HBP), 2017 WL 2709745, at *5 (S.D.N.Y. June 22, 2017) (collecting cases). The fact that an employee had, at some point, placed a sign in the area of the alleged puddle does not indicate notice, particularly when the record undisputedly establishes that, on rainy days, the Post Office's custodial employees put a wet floor sign in the Entrance Area as a matter of standard procedure. *See* P.S. ¶¶ 11; D.R.S ¶ 36. Nothing in the record suggests that the sign was placed there in response to a complaint that Defendant received or because an employee saw the alleged puddle. Because there is no evidence that Defendant had actual notice of the puddle, Plaintiff's negligence claim cannot proceed on an "actual notice" theory.

### D. There is No Evidence that Defendant Had Constructive Notice of the Alleged Puddle

Plaintiff presents two theories to argue that there is a dispute of material fact whether Defendant had constructive notice of the alleged puddle: (1) the puddle was present for a

sufficiently long period of time to put Defendant on constructive notice and (2) Defendant had knowledge of a recurring dangerous condition.

### 1. Constructive Notice: Existing for a Sufficient Length of Time

First, Plaintiff argues that Defendant had constructive notice of the alleged puddle because, consistent with Defendant's policy, when it stops raining, the custodian mops the area one last time and does not re-inspect the area, and Plaintiff testified that it had stopped raining 30 to 60 minutes prior to her accident. Opp. at 8. "Thus, the only evidence suggests the puddle was there for 30-60 minutes, which is sufficient to have put the defendant on constructive notice." *Id*. at 9.

Defendant challenges this temporal inference and argues that, even if Plaintiff's argument were logical, it is legally insufficient because, under this constructive notice theory, she must also establish that the dangerous condition was "visible and apparent." Reply at 3. Defendant notes that not only did Plaintiff completely ignore the visibility component in her Opposition, but the record also contains no evidence that the alleged puddle was visible and apparent—Plaintiff herself testified that she did not see it before she fell. *Id*.

Plaintiff has failed to adduce sufficient evidence to proceed to trial on the constructive notice theory that requires (1) the danger to be visible and apparent and (2) the danger to have existed for a sufficient length of time prior to the accident. *See Decker*, 2017 WL 568761, at *6 (quoting *Nussbaum*, 603 F. App'x at 12).

The Court notes that Plaintiff's testimony about the weather was uncertain and qualified as to how long before her accident it had stopped raining:

Q: Do you know when approximately the rain stopped that day?

A: Maybe like half an hour to an hour before . . . I arrived at the post office.

9

Bogery Tr. at 38:25–39:7.  Second, even crediting Plaintiff's theory that, because the custodian would have mopped and dried the area when it stopped raining, the puddle *must* have formed in the intervening time between the custodian's mopping and her fall, there is no evidence as to when *within* that alleged 30 to 60 minute window the puddle formed.  It is, therefore, entirely speculative as to how long the puddle existed in the Entrance Area.  Bogery advances no theory, let alone evidence, of how such a large puddle could have formed inasmuch as it had stopped raining.  More problematic, Bogery does not engage with the possibility that the puddle was not weather-related at all but resulted from a spill that occurred moments before her fall.

In effect, Plaintiff's case stands on a series of speculative inferences, which renders her argument legally insufficient to defeat Defendant's motion for summary judgment.  A "plaintiff may not meet her burden through speculation as to the amount of time the condition existed before the accident."  *Rivera*, 2017 WL 2709745, at *6.  *See also Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) ("To get to a jury, [Plaintiff] is required to provide some basis for an inference that the spill was there long enough to blame [Defendant] for the accident.  But there is simply no evidence, apart from [Defendant's employee's] testimony, as to how long that period was.  For all we know, the lotion may have been on the floor for a long time, or it may have spilled moments before [Plaintiff] slipped on it.  In short, it would be speculative to infer that the lotion had been on the floor for an appreciable length of time.") (internal quotation marks, alteration, and citation omitted).  Because there is no evidence in the record to establish when the puddle formed, summary judgment for the defendant is proper as to this theory of liability.  *See, e.g.*, *Rodriguez*, 2017 WL 4045745, at *4 (citation omitted).

Even if Plaintiff had evidence that the puddle existed long enough to have been noticed, Defendant is correct that she has not presented evidence to prove the other component of this test; Plaintiff has adduced no evidence that the puddle was visible, even though she acknowledges that this is part of the legal standard. *See* Opp. at 7–9. Moreover, the only evidence in the record regarding the puddle's appearance suggests that it was *not* visible and apparent: Bogery herself testified that she did not see the puddle before she fell. *See* Bogery Tr. at 43:24–44:12. "Courts in the Second Circuit have routinely granted summary judgment in similar slip and fall claims on the ground that the defect was not visible and apparent when a plaintiff did not see it prior to the fall." *Watts*, 2018 WL 1626169, at *5 (collecting cases). Accordingly, because there is no evidence that the alleged puddle was visible and apparent, Plaintiff's claim is foreclosed on this theory of constructive notice.

### 2. Constructive Notice: Recurring Condition

Plaintiff's second theory of constructive notice rests on the fact that Defendant knew that water in the Entrance Area was a recurring problem. *See* Opp. at 9. She points to Basherdan's testimony regarding how rain comes into the building and the Post Office's standard procedures for rainy days, and she complains that Defendant did not place mats on the floor to manage the issue. *See id*. at 9–11. Defendant responds that Bogery again fails to address one of the elements of her constructive notice theory, this time ignoring whether there is evidence that the condition went "routinely unaddressed." Reply at 4–6. Defendant also argues that the record does not suggest it was aware of a recurring dangerous condition and contends that a general awareness that precipitation can be tracked inside a building is legally insufficient to prove constructive notice of a particular water puddle. *Id*. at 6–8.

There is evidence that the Post Office was aware of a recurring dangerous condition. The Court relies in particular on the fact that the Post Office had an established procedure for

addressing water in the Entrance Area on rainy days, which included regular inspections even on days when it just drizzled and constant monitoring on days when it rained heavily. *See* P.S. ¶¶ 10–17; D.R.S. ¶¶ 37–40. General awareness that precipitation may be tracked inside is insufficient to establish constructive notice, *see* Mem. at 10–12 (collecting cases), but case law suggests that a defendant's awareness of a dangerous condition that recurs in the same particular location is sufficient to prove constructive notice of a recurring condition.[5] Here, the Post Office's rainy day procedures, which are undisputed, focus particularly on the Entrance Area between the exterior door to Gleason Avenue and the interior lobby of the Post Office. This evidence suggests awareness of a recurring dangerous condition in a particular location within the Post Office.

Nonetheless, the very procedure that establishes awareness of the recurring condition negates the other element of this theory—that the condition went routinely or regularly unaddressed. In other words, the undisputed fact that Defendant had a comprehensive procedure in place for rainy days—and the presence of the wet floor sign in the Entrance Area, which was part of the procedure, is circumstantial evidence that the procedure was followed on the day in

---

[5] *See, e.g.*, *Riley v. Battery Place Car Park*, 210 F. App'x 76, 77 (2d Cir. 2006) ("However, unlike the plaintiffs in [the] recurrent condition cases cited by Riley, who alleged the regular recurrence of hazards in distinctly identifiable areas, Riley offered no evidence that oil leakage was a recurring condition on the ramp where she slipped. The record at most establishes that defendants had a 'general awareness' of oil leaks by parked cars on its premises, which, without more, is legally insufficient to support a finding that the owner had constructive notice of the specific oil patch that caused Riley to slip and fall.") (citing *Gordon*, 492 N.E.2d at 775); *Gonzalez v. Kmart Inc.*, No. 13CV5910PKCVMS, 2016 WL 3198275, at *5 (E.D.N.Y. June 8, 2016) ("By Plaintiff's own admission, her previous complaints to Kmart did not concern debris in the same location as the liquid and/or bread that allegedly caused her fall on June 22, 2012. . . . Thus, Plaintiff's testimony, which amounts to nothing more than providing Defendant with a 'general awareness' of debris in the store, fails to establish constructive notice.") (citation omitted); *Lowe v. Spada*, 722 N.Y.S.2d 820, 823 (3d Dep't 2001) ("Said differently, although plaintiff could not establish precisely when the large puddle had formed, this was not fatal since she did establish that she slipped on a puddle in the precise area of the bathroom where there had been an ongoing and chronic problem with water puddles routinely left unaddressed by the maintenance company, facts which fall squarely within the realm of a recurrent dangerous condition.").

question—precludes liability for accidents that arise from this known, recurring condition.[6] Plaintiff makes no effort to address this element of the "recurring condition" theory in her Opposition. *See* Opp. at 9–11. Nor is there evidence in the record from which Plaintiff might argue that the recurring condition regularly went unaddressed. The closest Plaintiff comes is her argument that the Post Office's failure to put mats down when it rained was evidence that the wet floor was a recurring condition (offered, it appears, to argue the first prong of this theory rather than the second). *See* Opp. at 9, 10. But Plaintiff cites no case law that holds that Defendant was required to use mats as part of its routine procedure to address the wet floor.[7]

---

[6] *See, e.g.*, *Pinnock v. Kmart Corp.*, No. 04 CIV. 3160 (RMB), 2005 WL 3555433, at *4 (S.D.N.Y. Dec. 29, 2005) (granting summary judgment where the "evidence presented of Kmart's maintenance procedures shows clearly that Kmart routinely addressed the issue of fallen hangers. . . . Defendant had comprehensive maintenance procedures in place to retrieve fallen hangers. The Operations Manager . . . walked the store continuously throughout the day, Kmart employees were instructed to pick up any and all hangers that they observed on the floor and were forbidden from walking by any hangers on the floor if they were observed, and a full time maintenance employee . . . constantly patrolled the store looking for any potential slipping or tripping hazards.") (internal quotation marks and alterations omitted)); *Pfeuffer v. New York City Hous. Auth.*, 940 N.Y.S.2d 566 (1st Dep't 2012) ("Moreover, plaintiff fails to raise a triable issue of fact as to NYCHA's constructive notice. A defendant may be charged with constructive notice when a dangerous condition is ongoing [and] routinely left unaddressed. Plaintiff's argument that NYCHA had constructive notice because the accumulation of debris and liquids in the stairwell was a routinely ignored, recurring condition is simply not supported by the record. To the contrary, NYCHA presented evidence that the building was cleaned daily and that the stairwell where plaintiff fell was cleaned shortly before he fell. . . . Even if the problem was recurring, the record reflects that NYCHA addressed it by cleaning up garbage and spills daily and inspecting the stairs twice a day thereby establishing that summary judgment should have been granted . . . .) (internal quotation marks and citations omitted); *cf. Irizarry v. 15 Mosholu Four, LLC*, 806 N.Y.S.2d 534 (1st Dep't 2005) (reversing lower court's grant of summary judgment where "deposition testimony of plaintiff and nonparty witnesses indicate not only that refuse on the subject stairwell was a recurring condition, but that it frequently remained unremedied. Plaintiff testified that garbage, in the form of a plastic bag, caused her fall. A tenant who used the stairs daily testified that the stairs were generally unclean and that litter was allowed to accumulate to an uncomfortable level. Another tenant testified that she complained to both the superintendent and the landlord that the stairs were not clean, and that garbage littered the stairs after tenants brought their garbage bags down the stairs for disposal.").

[7] In fact, though "a defendant may be held liable for an injury proximately caused by a dangerous condition created by water, snow, or ice tracked into a building if it either created the hazardous condition, or had actual or constructive notice of the condition and a reasonable time to undertake remedial action," a defendant "is not required to cover all of its floors with mats, or to continuously mop up all moisture resulting from tracked-in rain." *Hickson v. Walgreen Co.*, 56 N.Y.S.3d 157 (2d Dep't 2017) (citations omitted). Defendant's procedure of regular mopping was an appropriate method to "routinely address" the recurring condition of a wet floor in the Entrance Area on rainy days.

In sum, while there is evidence in the record from which Plaintiff can argue that water in the Entrance Area on rainy days presented a recurring condition, there is no evidence from which she could argue that this recurring condition went regularly or routinely unaddressed, precluding her claim based on a "recurring condition" theory.

### E. There is No Evidence to Support a Failure to Inspect Theory

Plaintiff also seeks to impose liability on Defendant through a "failure to inspect" theory. According to Plaintiff, actual or constructive notice becomes irrelevant when a defendant has failed to conduct reasonable inspections of its premises. *See* Opp. at 11. According to Plaintiff, Defendant failed to re-inspect the Entrance Area after it stopped raining (as its procedures did not require revisiting the area after a final mop-up unless it started to rain again).[8] *See id*. at 11–12. Defendant argues that Plaintiff's argument is legally insufficient because she has failed to present evidence as to when the puddle formed, such that it would have been discoverable upon reasonable inspection. Reply at 8–9. Additionally, Defendant argues that its policies were reasonable and challenges Plaintiff's interpretation of the evidence in the record. *Id*. at 9–10.

Courts differ on whether a failure to inspect is a means for establishing constructive notice or a separate obligation that displaces the need for notice when imposing premises liability. *See Cruz v. Target Corp.*, No. 14-CV-2728 (RER), 2016 WL 3102018, at *1 (E.D.N.Y. June 2, 2016) (collecting cases). Either way, however, the failure must be grounded in some

---

[8] Plaintiff makes an alternative argument that, based on the climatological reports from La Guardia Airport for the date in question, it "rained the entire day." *See* Opp. at 12. In accordance with Defendant's procedures, Plaintiff argues, its custodian must have failed to inspect the Entrance Area, as its procedures required someone to stand by or regularly check the area when it was raining. *See id*. Regardless of what the La Guardia report says (and it primarily shows immeasurable trace amounts of rain in the hours prior to the alleged accident at a location that is miles from the Post Office, *see* Dkt. 30-2 at 5), the parties have deemed it *undisputed* that it was not raining when Bogery entered the building, nor were there puddles on the ground outside the Post Office at that time. *See* P.S. ¶¶ 3–4. Accordingly, the premise of this alternative theory is faulty, as Defendant's custodian would no longer be required to monitor the Entrance Area if it had, as the parties agree, stopped raining at the Post Office. Thus, the account of rain at LaGuardia is not evidence of a failure in the Post Office's inspection procedures—Plaintiff cannot assert such a theory based on the undisputed evidence in the record. Plaintiff's "failure to inspect" theory fails for other reasons as well, as discussed above.

duty to inspect the premises, which Plaintiff makes no effort to establish. Plaintiff's Opposition cites only one case, *Meyer v. State of New York*, 403 N.Y.S.2d 420 (N.Y. Ct. Cl. 1978)), for the proposition that a duty and failure to inspect a premises obviates the need for notice, but she does not articulate, legally or otherwise, what duty this Defendant has. Opp. at 11. In *Meyer*, the "[c]laimants [sought] to fasten liability on the State [of New York] by virtue of its status as the owner of the premises" on which an accident took place. *Id*. at 423. The court invoked "[t]he duty of care [that] the owner of land owes to persons coming upon it [by which a] landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Id*. (internal quotation marks and citation omitted). More generally, though not explicitly invoked by Plaintiff, "New York common law obligates a landlord or owner to use reasonable care to inspect and repair common areas . . . ." *Williams v. Matrix Fin. Servs. Corp.*, 158 F. App'x 301, 303 (2d Cir. 2005) (quoting *Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs.,* 745 N.Y.S.2d 97, 102 (3d Dep't 2002)) (internal quotation marks omitted).

Accordingly, it would seem that Plaintiff is attempting to impose liability on Defendant by virtue of an owner's duty to inspect its property. But there is no evidence in the record that Defendant is the owner of the premises. In fact, the record includes Defendant's lease of the premises from a private entity, *see* Lease, which suggests that Defendant is *not* the owner of the property and does not have the common law duty to inspect the premises, the foundation of this theory of liability. Other courts have foreclosed liability for this exact reason. *See, e.g.*, *Simoes v. Target Corp.*, No. 11 CV 2032 DRH WDW, 2013 WL 2948083, at *10 (E.D.N.Y. June 14, 2013) ("Relying on this legal doctrine [of owner–inspection liability], plaintiff asserts that [the

defendant] should be charged with constructive notice of the spilled liquid due to its failure to conduct reasonable inspections of the front end of the store on the day the accident occurred. Plaintiff's reliance, however, is misplaced as the record is devoid of any evidence suggesting that [the defendant] was the owner or landlord of the premises at issue."). Therefore, lacking evidence that Defendant owned the premises where the alleged accident occurred, or that it otherwise had some legal duty to inspect the premises, Plaintiff cannot proceed on this theory of liability.

Even if Plaintiff *could* prove that Defendant had a duty to inspect the premises, Plaintiff's "failure to inspect" theory would still fail because, as discussed above, there is insufficient evidence to prove when the puddle was formed. "[P]laintiff has not shown that a reasonable inspection would have discovered the condition, as she cannot establish the length of time that the condition was there to be discovered." *Lacey v. Target Corp.*, No. 13 CV 4098 RML, 2015 WL 2254968, at *6 (E.D.N.Y. May 13, 2015).[9] In particular, even crediting Plaintiff's duration theory, there is no evidence as to when within the "maybe like half an hour to an hour" window

---

[9] *See also Taylor v. Manheim Mktg. Inc.*, No. 15CV01950PKC, 2018 WL 611628, at *2 (E.D.N.Y. Jan. 29, 2018) ("Plaintiff still could not prevail on his negligence claim because the evidence is insufficient to show that the allegedly hazardous condition—the patch of ice or patch of oil—existed long enough for Defendant to have become aware of it through the exercise of reasonable diligence. Plaintiff cannot establish the length of time that the condition was there to be discovered, or even that the condition existed in the first place.") (citing *Young v. Morrison Mgmt. Specialists, Inc.*, No. 14-CV-4261 (RER), 2017 WL 435783, at *5 (E.D.N.Y. Feb. 1, 2017)); *Gonzalez*, 2016 WL 3198275, at *6 ("Plaintiff cannot point to evidence that . . . shows that the spill existed for such a long period of time that the Court can infer the Defendant violated its duty to conduct reasonable inspections.") (citations omitted); *Lionel v. Target Corp*., 44 F. Supp. 3d 315, 321–22 (E.D.N.Y. 2014) ("However, Plaintiff's evidence is insufficient to establish the reasonable inference that Defendant breached this duty, since there is no evidence in the record indicating how long the food container lid remained on the floor prior to Plaintiff's fall, in order to establish that the hazard was not properly observed or, although observed, not cleaned.") (citing *Kelsey v. Port Auth. of New York & New Jersey*, 383 N.Y.S.2d 347, 348 (1st Dep't 1976)) (internal quotation marks omitted).

One judge has rejected the proposition that, to proceed on a failure to inspect claim, a Plaintiff must also present evidence as to how long a hazard existed and could have been identified through an inspection, but this case appears to be in the minority. *See Cruz*, 2016 WL 3102018, at *2. In fact, in a subsequent case, the same judge reversed himself and took the majority position: "To prevail on a failure to inspect theory, the plaintiff must still demonstrate not only that the defendant breached its duty to inspect but that a reasonable inspection would have prevented the injury. . . . . Thus, some evidence of timing is still required." *Young*, 2017 WL 435783, at *4 (citing *Lacey*, 2015 WL 2254968, at *6).

16

preceding Bogery's alleged fall that the puddle formed. Absent that fact, Bogery's estimation as to how long the puddle existed in the Entrance Area is purely (and impermissibly) speculative. *See supra* section II.D.1.

In all, because Plaintiff has adduced no evidence that Defendant had any duty to inspect the premises, nor evidence as to how long the puddle existed, she cannot proceed past summary judgment based on the theory that Defendant "failed to inspect" the premises.

## III. CONCLUSION

Because Plaintiff has no evidence to support essential elements of her claim on each of her liability theories, Defendant's motion for summary judgment is GRANTED. The Clerk is respectfully directed to terminate the open motion at Docket Entry 28 and close the case.

**SO ORDERED.**

Date: September 6, 2018　　　　　　　　　　　　　　　_____
New York, New York　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**